UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OKLAHOMA

SUZANNE RUSSELL, Gdn

    Plaintiff(s)

Versus                 No. 06-CV-538-GKF-PJC

CHASE INVESTMENT SERVICES CORP.

    Defendant(s)

**PLAINTIFF'S RESPONSE TO
MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

1. Plaintiff, as co-guardian, did not receive monthly statements of her husband's IRA monthly statements from Chase, or Bank One at the time, nor did she receive the bank account statements for the Arkansas Valley State Bank. (Russell Deposition p. 6)

2. Brenda Kennemar received those statements. Plaintiff received $1,000 per month from the IRA, minus taxes, leaving $850. She was not aware of any other withdrawals being made from her husband's IRA account. (Russell Deposition p. 7 & 20 & 47) Kennemar got the Arkansas Valley Bank statements, would not give Plaintiff the password to find out what the balances were. (Russell Deposition p. 21)

3. At the time the guardianship was set up there was $221,574.73 in the account. In 2005 she discovered there was only $101,000 left. (Russell Deposition p. 8)

4. When she received the tax returns showing the excess withdrawals, she contacted her attorney, changed CPAs, and changed bank accounts. (Russell

**EXHIBIT B**

Deposition p. 15-16) When Kennemer received a letter from Plaintiff's attorney, "she swallowed a gun."

5. When she and Kennemar were appointed co-guardians, she and Kennemar took both the power of attorney and the guardianship papers to Chase, and Plaintiff told Chase that the guardianship was in effect and that the durable power of attorney had no bearing, and she told that to Mr. Naifeh. (Russell Deposition p. 40-41 & 90)

6. Previous discovery, Plaintiff had only stated there was a blonde woman with Ellis Naifeh. Plaintiff talked to her and told her many times over the telephone the durable power of attorney was not there, and what they were doing was illegal. She told Leanne Gross that Chase could not transfer funds from the original way her husband had set up the IRA. It was her assumption the assets were to remain as the assets were at the time he became incapacitated. (Russell Deposition p. 42-43)

7. Whenever she would protest about what was being done with the IRA account to Naifeh and Leanne Gross, they told her that Kennemar was using the durable power of attorney, and she kept telling them the guardianship took precedence over it, and they would not recognize that fact. (Russell Deposition p. 46)

8. After the death of Kennemar, Plaintiff got a court order allowing the payment of her husband's first monies for nursing home expenses. When she presented the order to Chase, Naifeh told her the order was not enough, and he would not accept it. After Chase legal got involved, the money was paid. (Russell Deposition p. 78-79)

Case 4:09-cv-00360-GKF-TLW   Document 10-3 Filed in USDC ND/OK on 07/13/2009   Page 3 of 6
Case 4:06-cv-00538-GKF-TLW   Document 22 Filed in USDC ND/OK on 06/04/2007   Page 3 of 6

9. She wants the moneys that were removed from the Chase IRA and the bond account. She did not receive any of that money, only $42,000. She did not spend any money that came from the IRA. (Russell Deposition p. 83-84) She wants the amount the bonds were cashed in, which began at $46,000, and now $31,000.15. (Russell Deposition p. 89)

10. Chase was relying solely on the durable power of attorney in disbursing moneys out of the IRA to Kennemar. See Attachment 2.

## ARGUMENT

Chase was and still is the Custodian of Donald R. Russell's IRA account. Their argument is boiled down to two spurious legal arguments, i.e., that 1) Chase was not a fudiciary and 2) that there was only a bank debtor-relationship between the parties such that the delivery of the monthly bank accounts to Kennemar barred recovery by reason of 12A O.S. § 4-406 (2001). Based upon the facts, this is a patently incredible argument.

## PROPOSITION I: A CUSTODIAN OF AN INDIVIDUAL RETIREMENT ACCOUNT IS A TRUSTEE, i.e., A FIDUCIARY.

It is absolutely incredible that attorneys representing one of the nation's largest banking and trust companies would assert such an argument. See 26 USCS §408:

> (a) Individual retirement account
> For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
> **(2)** The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.
> **(h) Custodial accounts**
> For purposes of this section, a custodial account shall be treated as a trust if the assets of such account are held by a bank (as defined in subsection

(n)) or another person who demonstrates, to the satisfaction of the Secretary, that the manner in which he will administer the account will be consistent with the requirements of this section, and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account described in subsection (a). For purposes of this title, in the case of a custodial account treated as a trust by reason of the preceding sentence, the custodian of such account shall be treated as the trustee thereof.

We will not belabor this obvious point beyond In Re McDaniel, 41 B.R. 132, 133 (1984 BC WD Tex):

> In an earlier opinion in the Northern District of Texas I had rejected the precise argument advanced by the bank. *See In re Dunn*, 5 B.R. 156 (Bkrtcy.N.D.Tex.1980). In *Dunn* I had concluded that the bank is disqualified, both statutorily and at common law, from asserting any claim to the IRA funds. I remain of the same opinion. There, as here, the fiduciary capacity in which the bank serves as trustee must predominate over any other relationship with the debtor. As to matters within the scope of the fiduciary relationship the bank as trustee is under a duty not to profit at the expense of the beneficiary. It has the duty of loyalty and must administer the trust solely in the interest of the beneficiary. It must keep the trust property separate from its individual property which is not subject to the trust. Above all it is precluded from asserting any claim in the trust which is antagonistic to the beneficiary.

## PROPOSITION II: IT IS UNDISPUTED FACT PLAINTIFF NEVER RECEIVED ANY OF THE BANK STATEMENTS DURING THE TIME KENNEMAR WAS TAKING MONEY FROM THE IRA.

Chase bottoms their proposition of the one year bar under 12A O.S. § 4-406 (2001) and the inapplicable case cited in their brief relating to the discovery of unauthorized signatures on an account. Why did they not point to First National Bank of McAlester v Mann, 1965 OK 127, ¶¶23-25, 410 P.2d 74:

> ¶23 Assuming notice to defendant by plaintiff was required, it is undisputed that the matter of Morrison's defalcations were discussed with one of defendant's officials by February 17, 1959. Thereafter, written notice was furnished, together with many checks considered as forgeries, but the bank officer advised plaintiff's attorney the matter should be submitted to the bank's attorney and took no further action. This written notice was

given March 3, 1959, and there was no evidence to establish that the February bank statements were made available to plaintiff prior to that date. The evidence bearing upon the careless handling of the bank statements by defendant has been noted. Unquestionably, bank statements for an undetermined number of months never reached plaintiff after being delivered to Morrison, since they were found in his repossessed automobile after the forgeries were discovered. The evidence also showed that the bank statements for the period were delivered to the forger. There was no evidence to establish when the plaintiff received possession of the forged instruments, although it did appear that in some bank statements from which plaintiff's wife began her audit the forged checks had been removed.

¶24 We have not considered the question of limitation under such circumstances heretofore. We are impressed, however, with the reasoning and result in Benge v. Michigan National Bank, 341 Mich. 441, 67 N.W.2d 721, 50 A.L.R.2d 1108 cited by plaintiff. In that case the plaintiff's husband forged checks against her account, and then intercepted the bank statements when mailed, so that notice of the forgeries never came to plaintiff. In an action to recover the amount of the forgeries the bank claimed the action was barred under a statute requiring notice to the bank within three months after voucher of such payment was returned to the depositor. It was held that requiring return of vouchers to the depositor fairly could be construed as requiring receipt thereof. A depositor who neither received nor had knowledge of forged checks charged against his account should not be denied the right to recover because of failure to give the statutory notice. Had such result been intended, the Legislature could have expressed such intent.

¶25 We are of the opinion the evidence failed to show that the monthly statements for the period involved reached the plaintiff, although it did appear defendant was advised of the forgeries immediately upon same being discovered. The 20 checks involved all were issued within 12 months from the date the first forged check should have been returned to plaintiff. These circumstances destroy the soundness of the defense sought to be asserted.

## CONCLUSION

The Court is referred to Plaintiff's Reply to Defendant's Response regarding the motion to certify the question to the Supreme Court regarding the effect of appointment of a guardian upon durable power of attorney, especially where here, the fiduciary had actual notice of the appointment, especially in light of the statutes cited in that response.

Based upon the facts herein and the obvious applicable law, Defendant's motion for summary judgment must be denied.

*Quod Erat Demonstratum*

---

Lawrence A. G. Johnson #4705
2535 East 21st Street
Tulsa, OK 74114
(918) 743-0459
FAX 744-6686
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, June 04, 2007 I served the attached document on the following who is registered participant of the ECF System: tbogan@jonesgotcher.com.

s/Lawrence A. G. Johnson